2005 WL 2654372
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

MASON TENDERS, et al., Plaintiffs,
v.
TAHER CONTRACTING CO., INC., et al., Defendants.

No. 02Civ.9227(RLC)(RLE). | Oct. 13, 2005.

Opinion

## REPORT AND RECOMMENDATION

ELLIS, Magistrate J.

### I. INTRODUCTION

*1 Plaintiffs Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund, New York State Laborers-Employers Cooperation and Education Trust Fund, New York Laborer's Health and Safety Trust Fund and Building Contractors Association Industry Advancement Program (collectively, the "Funds"); John L. Virga, in his fiduciary capacity of Director; and Anthony Silveri, as Business Manager of the Mason Tenders District Council (together with the Funds, "Plaintiffs") brought this action under §§ 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended (29 U.S.C. §§ 1132(a)(3), 1145) ("ERISA") and § 301 of the Labor-Management Relations Act of 1947 (29 U.S.C. § 185) (the "Taft-Hartley Act"). Plaintiffs seek to recover delinquent contributions owed to them by Taher Contracting Company, Inc. ("TCC") and Mohamed A. Taher ("Taher") (collectively, "Defendants"). Defendants have failed to respond to the complaint or to otherwise defend the action.

On June 25, 2003, Plaintiffs submitted affidavits and other support for their request for relief. Plaintiffs seek default judgment and recovery of: (1) the principal amount of fringe benefits, including amount of dues checkoffs and Political Action Committee ("PAC") contributions; (2) compound interest on the fringe benefit, interest on dues checkoff, and interest on unremitted PAC contributions permitted under N.Y. C.P.L.R. § 5004, 29 U.S.C. § 1132(g)(2)(C)(i); (3) statutory damages under 29 U.S.C. § 1132(g)(2)(C)(i); (4) attorney's fees as mandated by 29 U.S.C. § 1132(g)(2)(D); (5) a contractual fee for failure to provide an audit, and an order compelling

compliance; and (6) the posting of a bond. For the reasons set forth below, this Court recommends a default judgment and a total award of $8,308.15.

## II. BACKGROUND

The Funds provide various fringe benefits to eligible employees on whose behalf employers contribute to the Funds, pursuant to collective bargaining agreements between employers and the Mason Tenders Union ("Union"). Complaint ("Compl.") at ¶ 4. The Union is a labor organization that represents its constituent locals, which function as smaller seven-plus member labor unions. *Id.* at ¶ 9. Defendants are a for-profit domestic corporation doing business in New York City. *Id.* at ¶ 11. The collective bargaining agreement ("CBA") executed between Defendants and the Union obligates Defendants to pay and/or submit the required monetary contributions and/or reports to the Funds. *Id.* Further, the CBA permits the Funds to conduct an audit of the books and records of Defendants. *Id.*

On November 19, 2002, Plaintiffs filed suit against Defendants, alleging that Defendants breached the CBA by failing to pay and/or submit the required monetary contributions and/or reports to the Funds, and to remit dues checkoffs to the Union when scheduled. *Id.* at ¶ 1. Plaintiffs allege that Defendants' failure to remit payments violates both ERISA and the Taft-Hartley Act. *Id.*

## III. DISCUSSION

### A. Default Judgment Standard

*2 A court may enter a judgment of default pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure upon the presentation of an application for the entry of judgment. Notice of the application must be sent to any defaulting party so that it has an opportunity to show cause to the court why a default should not be entered. In determining whether to grant the application, a court may consider numerous factors, including "whether [the] plaintiff has been substantially prejudiced by the delay involved [ ] and whether the grounds for default are clearly established or in doubt." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2685 (3d ed.1998).

The grounds for a default judgment are "clearly established" in the instant case as Defendants have failed to answer Plaintiffs' complaint, which was filed more than two years ago. Following the referral of the case to the undersigned, a conference was scheduled on October 15, 2003. Taher appeared individually at the conference, and was informed of his and TCC's right and obligation to respond. However, neither defendant has responded since then.

## B. Recovery of Unpaid Benefits, Union Dues, and PAC Contributions

Plaintiffs' CBA entitles them to unpaid fringe benefit contributions, unpaid union dues, and unpaid PAC contributions. *See* 29 U.S.C. § 1132(a)(3)(B). Defendants must make contributions in accordance with the CBA. 29 U.S.C. § 1145. Because a partial audit based on employee pay records shows that Defendants withheld these amounts, they are liable to plaintiffs for a total of $3,619.84, consisting of $3,338.24 in unpaid fringe benefit contributions, $256.00 in dues checkoff, and $25.60 for unpaid PAC contributions.

## C. Interest

Plaintiffs are also entitled to interest on the unpaid fringe benefits, union dues, and PAC contributions. ERISA provides for the mandatory award of interest when an audit determines that the employer has failed to remit contributions as required. § 502(g)(2)(B), 29 U.S.C. § 1132(g)(2)(B). The amount of interest on the fringe benefit contributions from the partial audit is determined based on the federal short-term rate. *See* 26 U.S.C. § 6621(a). The federal short-term interest rate on the $3,338.24 principal is as follows:

| Period | Days | Rate | Interest |
| --- | --- | --- | --- |
| July 15, 2000 through March 31, 2001 | 260 days | at 9% | $213.31 |
| April 1, 2001 through June 30, 2001 | 91 days | at 8% | $66.77 |
| July 1, 2001 through December 31, 2001 | 184 days | at 7% | $116.84 |
| January 1, 2002 through December 31, 2002 | 365 days | at 6% | $200.29 |
| January 1, 2003 through September 30, 2003 | 273 days | at 5% | $125.18 |
| October 1, 2003 through March 31, 2004 | 183 days | at 4% | $66.77 |
| April 1, 2004 through June 30, 2004 | 91 days | at 5% | $41.73 |
| July 1, 2004 through September 30, 2004 | 92 days | at 4% | $33.38 |
| October 1, 2004 through March 31, 2005 | 182 days | at 5% | $83.46 |
| April 1, 2005 through September 30, 2005 | 183 days | at 6% | $100.15 |
| October 1, 2005 through October 12, 2005 | 12 days | at 7% | $7.68 |
| TOTAL | | | $1,055.56 |

\*3 The dues and PAC interest rates are nine percent and are calculated from the date when the payments were first due, here July 15, 2000. *See* N.Y. C.P.L.R. § 5004; *Mason Tenders Dist. Council Welfare Fund v. Mackroyce Constr. Corp.*, 1998 WL 193075, at \*2 (S.D.N.Y. Apr. 22, 1998).

Accordingly, I recommend that Plaintiffs be awarded a total of $1,187.60 in interest, consisting of $1,055.56 in interest on the fringe benefit principal, $120.04 in interest for dues checkoffs, and $12.00 in interest for unremitted PAC contributions.

**D. Statutory Penalties**

Plaintiffs are further entitled to statutory penalties stemming from Defendants' failure to remit the required penalties. *See Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.,* 68 F.3d 1502, 1506 (2d Cir.1995). Under ERISA, Plaintiffs may be entitled to a penalty equal to the interest on the unpaid contributions, or CBA liquidated damages, whichever is greater. § 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(C). Because the interest on the unpaid fringe benefits is greater than the CBA liquidated damages, I therefore recommend Plaintiffs be awarded $1,055.56.

**E. Attorney's Fees and Costs**

Plaintiffs seek an award of attorneys' fees in the amount of $1,143, and costs in the amount of $190. Plaintiffs are entitled to an award of reasonable attorneys' fees and costs that are calculated using the "lodestar" method, 29 U.S.C. § 1132(g)(2)(D), that is, the hours reasonably expended multiplied by a reasonable hourly rate. *See LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 763-64 (2d Cir.1998) (*quoting Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). The lodestar figure is calculated based upon current, prevailing market rates. *See id.* at 764 (*quoting Blum v. Stenson,* 465 U.S. 886, 895 (1984)). In addition, the CBA expressly provides for the award of reasonable attorney's fees and costs as a penalty for failure to remit payments. *See* Affidavit in Support of Plaintiffs' Motion for Default by Dominick Giammona ("Giammona.Aff."), Exhibit ("Exh.") A, Article IV § 17(g) ("In the event that formal proceedings are instituted before a court ... the Employer shall pay ... reasonable attorney's fees and costs of the action").

Plaintiffs have submitted two affidavits in support of the application for an award of attorney's fees and costs. The principal attorney on the case, Michael J. Vollbrecht, has submitted an affidavit setting forth his hourly billing rate of $225 and services amounting to a total of 2.8 hours of work. Affidavit for Attorney's Services by Michael J. Vollbrecht ("Vollbrecht Aff.") at ¶¶ 2-3 and Exh. B. In addition, he claims compensation for three hours at $125 per hour by his associate, Maria Felix. Vollbrecht Aff. at ¶¶ 4-6 and Exh. C. He also claims $60 per hour for 0.2 hours of paralegal Jose Morales's time. Vollbrecht Aff. at ¶¶ 7-9 and Exh. E. A further Affidavit of Paralegal's Service is submitted by Michelle Stein-Berman, claiming compensation for 2.1 hours of work at a billing rate of $60. ¶¶ 2-3 and Exh. D. After reviewing the materials, I find that the hourly rates and time expended appear to be reasonable. Accordingly, applying the lodestar method, I recommend that Plaintiffs be awarded $1,143 in attorney's fees.

**\*4** In addition, Plaintiffs have submitted evidence of the costs incurred in this action for filing and service fees, which total $190. The costs are reasonable, and I recommend that Plaintiffs be awarded $190 in costs.

### F. Audit Fees

The CBA provides that Plaintiffs are entitled to periodically inspect Defendants' books and records to ensure compliance with the employer obligations to contribute to the Funds. Giammona Aff.,Exh. A, Article VI § 17(a). Accordingly, the Court recommends that Defendants be ordered to cooperate in an audit, on a date set by Plaintiffs, and that Defendants participate and cooperate in a complete audit from the period of April 20, 2000, to the audit date. This audit will include, but is not limited to, the following documents: (1) payrolls and payroll ledgers, including office payroll, yard payroll, payoff payroll, New York and New Jersey payroll, and computer payroll; (2) federal tax forms W2 and 941; (3) state tax forms WT4-A and 4B(N.Y.); (4) annual federal and state tax returns; (5) cash disbursements journal; (6) purchase journal; (7) 1099 forms; (8) New York and New Jersey employment records; (9) insurance company reports and supporting checks; (10) vouchers; and (11) any other items concerning payroll.

Plaintiffs additionally seek a contractual fee for the failure of defendants to provide an audit. *Id.* at § 17(e) ("In the event that the Employer fails to produce the book and records necessary for an set forth ... the Employer agrees to pay a penalty of $400.00"). Plaintiffs attempted to obtain access to Defendants' records for the period of April 20, 2000, to date, and Defendants failed to permit the routine audit. Therefore, pursuant to the terms of the CBA, I recommend that Plaintiffs be awarded $400 for Defendants' failure to permit an audit.

Plaintiffs also seek the recovery of auditors' fees under 29 U.S.C. § 1132(g)(2)(E) and the CBA. *See Mason Tenders Dist. Council v. Envirowaste and Transcontractors, Inc.,* 1999 WL 370667, at \*2 (S.D.N.Y. June 7, 1999). The CBA provides that: "[if] ... the Employer is found to be substantially delinquent ... in the payment of fringe benefit contributions to the ... Funds, the Employer shall bear the imputed cost of an audit ... or the actual cost of an audit, whichever is less." Giammona Aff., Exh. A, Article VI § 17(d). The actual cost of the audit is $712.15, and I recommend that plaintiffs be awarded this amount.

### G. Bond Requirement

Finally, Plaintiffs seek an order requiring Defendants to post a $6,000 bond within thirty days of service of this judgment to guarantee payment. The CBA requires the posting and maintenance of a bond in order to ensure payment to the Fringe Benefit Funds. *See id.* at § 14(a). The CBA also expressly provides that the minimum amount of the bond that the employer is required to maintain is $6,000. *Id.* Accordingly, I recommend that Defendants be ordered to post a $6,000 bond within thirty days after receiving notice of this judgment.

## IV. CONCLUSION

*5 For the reasons set forth above, I recommend that Plaintiffs be awarded $8,308.15, which includes: the amount of fringe benefits; statutory damages and compound interest on the fringe benefits permitted under 29 U.S.C. § 1132(g)(2)(C)(i); amount of dues; interest on dues checkoff principal permitted under N.Y. C.P.L.R. § 5004; amount of PAC contributions; interest on unremitted PAC contributions allowed under N.Y. C.P.L.R. § 5004; costs permitted under 29 U.S.C. § 1132(g)(2)(D); a contractual fee for failure to provide an audit and an order to participate in an audit, as well as attorneys' fees, as mandated by 29 U.S.C. § 1132(g)(2)(D). Additionally, I recommend that Plaintiffs be ordered to post a $6,000 minimum bond within thirty days.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Robert L. Carter, 500 Pearl Street, Room 2020, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 150 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) *(per curiam )*; 28 U.S.C. § 636(b)(1) (West Supp.1995); Fed.R.Civ.P. 72, 6(a), 6(e).

End of Document © 2013 Thomson Reuters. No claim to original U.S. Government Works.